UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HERBAL SENSATIONS, INC.

    **Plaintiff**

    v.                                CIVIL NO. 97-2417 (JAG)

JOSE A. ALICEA RIVERA, et al.

    **Defendants**

---

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

    The Court has before it defendants Jose Alicea Rivera ("Alicea"), Enrique Velazquez Irigoyen ("Velazquez"), Teresa Santoni ("Santoni"), Norma Giralt ("Giralt"), and Alberto Casanova's ("Casanova")(collectively, "defendants") motion to dismiss plaintiff Herbal Sensations' ("Herbal") Amended Complaint. (Docket Nos. 50, 57.) On March 15, 2002, Herbal filed an opposition. (Docket No. 67.) Herbal contends that defendants, who worked as officers and employees of the Puerto Rico Department of Consumer Affairs ("DACO," by its Spanish acronym), violated its federal constitutional rights by temporarily precluding it from selling the product "Fattaché" in Puerto Rico. Upon review of the parties' submissions, the Court grants the motion in part and denies it in part.





## FACTUAL BACKGROUND

Herbal owns a dietary supplement offered for sale in interstate commerce under the trademark name "Fattaché." (Docket No. 50, ¶ 9.) The Food and Drug Administration and the Florida Department of Agriculture and Consumer Affairs have approved the product for sale to the general public. (Id., ¶ 11.) In February 1996, the company authorized the marketing and sale of the product in Puerto Rico. (Id., ¶ 12.) For the next six months, sales of Fattaché in Puerto Rico increased consistently, and the product gained substantial consumer acceptance and goodwill. (Id.)

In April 1996, Alicea, DACO's Secretary, received a fax from Dr. Jaime Claudio expressing concern about Fattaché and its ingredients. Based on the fax's contents, DACO began an investigation about the product. (Id., ¶ 13.) On April 17, 1996, Velazquez, a DACO Assistant Secretary in charge of the agency's Information and Fiscalization Division (the "Division"), began an investigation as to certain Fattaché-related television advertisements that aired on April 16, 1996. (Id., ¶ 14.) As part of that investigation, Velazquez (or the Division) required television station Telemundo (WKAQ-TV) to provide the name and address of Fattaché's advertiser by August 21, 1996. (Id., ¶ 15.) Around August 19, 1996, Telemundo informed DACO that Herbal was the advertiser of the product, and relayed the company's

address in Miami, Florida. (<u>Id.</u>, ¶ 16.)

That same day, Casanova, DACO's special investigator, telephoned Jose A. Diaz ("Diaz"), Herbal's President, at the company's offices in Miami. (<u>Id.</u>, ¶ 17.) Casanova advised Diaz that DACO was conducting an investigation to determine whether the April 16, 1996 television ads were misleading to the public. (<u>Id.</u>, ¶ 18.) Diaz offered to provide Casanova and DACO with information regarding Fattaché and Herbal. (<u>Id.</u>, ¶ 19.) Casanovas declined the offer, and told Diaz that DACO would issue a specific request for information in due course. (<u>Id.</u>, ¶ 19.) During the conversation, Diaz informed Casanova that Herbal would move its offices shortly. (<u>Id.</u>, ¶ 20.)

On August 26, 1996, DACO sent Herbal a letter signed by Velazquez. (<u>Id.</u>, ¶ 21.) The letter required Herbal to provide, within fifteen days, scientific evidence and information about Fattaché, as well as the name of the person who distributed the product in Puerto Rico. (<u>Id.</u>, ¶ 22.) DACO sent the letter to Herbal's then-known address. By that time, however, the company had moved its offices to another location in Miami. (<u>Id.</u>, ¶ 23.) Although the company retained the same telephone number, no DACO official made an effort to contact anyone at Herbal.[1] From

---

[1] The Amended Complaint states that DACO sent the letter by certified mail, but there appears to be no evidence of that fact. See Docket No. 50 at ¶ 23.

August, 1996 forward, DACO did not gather any information or conduct any investigation regarding Fattaché or Herbal. (Id., ¶ 24.)

On September 26, 1996, Giralt and Alicea drafted, approved and issued a Cease and Desist Order (the "Order") requiring Herbal and Diaz to immediately discontinue any television advertisements regarding Fattaché and prohibiting various television stations from airing any such advertisements. (Id., ¶ 25.) Herbal claims that, for purposes of issuing the Cease and Desist Order, Giralt and Alicea did not consider (1) Herbal's offer to volunteer product-related and company-related information to DACO or (2) the absence of any investigation regarding Fattaché or Herbal. (Id., ¶ 26.)

The Cease and Desist Order erroneously claimed, *inter alia*, that Herbal had refused to comply with the requests outlined in the August 26, 1996 letter, that the company's claims regarding the product were not backed by scientific evidence, and that the company had refused to post a non-resident bond required under DACO's regulations.[2] (Id., ¶ 27.) Contemporaneously with the issuance of the Cease and Desist Order, DACO issued a Press Release entitled "DACO Warning Against Fattaché." (Id., ¶ 28.)

---

[2] DACO faxed the Cease and Desist Order to Herbal on September 27, 1996, after it had made its contents public in Puerto Rico, and only after Edward Naranjo, Herbal's Chief Executive Officer, telephoned Casanova and requested a copy of the order. (Id., ¶ 31, 32.)

4

The release sought to alert consumers as to Herbal's allegedly deceptive advertisements regarding Fattaché, and to inform the public that DACO would continue to "detect and stop deceitful practices and advertisements." (Id., ¶ 29.)

As soon as Herbal learned of the existence of the Order, the company complied immediately with all of the requirements set forth in it. (Id., ¶ 33.) By October 3, 1996, Herbal had posted the required non-resident bond and had provided DACO with all of the information it had requested. (Id., ¶ 34.)

On October 4, 1996, Herbal officials appeared before Santoni, DACO's Administrative Law Judge, for an administrative hearing. Herbal requested that the Order be set aside or modified to allow it to advertise the product in Puerto Rico. (Id., ¶ 35, 36.) Herbal argued that it had complied with all of the requirements set forth in the Order, and argued that DACO should impose no fines against it. (Id., ¶ 37.)

The administrative hearing lasted three days, and concluded on October 9, 1996. Santoni stated that she would issue an expedited Opinion. (Id., ¶ 40.) By October 16, 1996, the opinion had not yet issued, and Herbal decided to file an action in federal court alleging violations of its civil and constitutional rights, and seeking preliminary and permanent injunctive relief, as well as damages. (Id., ¶ 42-43.) On October 24, 1996, the District Court issued a temporary

restraining order precluding DACO and the defendants from enforcing the Order or otherwise infringing on Herbal's rights. (Id., ¶ 44.) Both proceedings - the federal litigation and the administrative proceeding - continued their course. DACO issued an administrative Resolution and Order on November 7, 1996, presumably upholding the advertising ban.[3]

On February 19, 1997, the parties reached an agreement to settle the federal litigation. (Id., ¶ 45.) The agreement disposed of Herbal's claims for equitable relief, but preserved Herbal's right to bring a subsequent suit for damages. (Id., ¶ 45.) As part of the stipulation, Herbal and Diaz specifically waived their right to judicial review of DACO's administrative ruling. (Id., Exh. 5 at ¶ 10.) The district court approved the stipulation and entered judgment dismissing the case without prejudice on February 24, 1997. (Id., ¶ 45.)

Seven months later, on September 24, 1997, Herbal filed a second suit in federal court, seeking $5 million in damages. (Docket No. 1.) On September 13, 2001, Herbal filed an Amended Complaint. (Docket No. 50.) Herbal claims that defendants' actions violated its federal rights to due process, equal protection, and commercial free speech.[4] (Id., ¶ 46-49.)

---

[3] The Complaint does not state as much, but Herbal alludes to that decision in other filings before the Court.

[4] Herbal also brought a pendent state claim for negligence under Article 1802 of the Puerto Rico Civil Code. (Docket No. 50

6

Moreover, Herbal contends that defendants' actions brought sales of the Fattaché product in Puerto Rico to a "screeching halt," caused the company to sustain heavy financial losses and irreparable damage to its commercial reputation. (Id., ¶ 50.)

## DISCUSSION

I.   <u>Motion to Dismiss Standard</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Complaint may not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts in support of her claim which would entitle her to relief. <u>See</u> <u>Brown v. Hot, Sexy, and Safer Prods., Inc.</u>, 68 F.3d 525, 530 (1st Cir. 1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiffs's favor. <u>See</u> <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 51 (1st Cir. 1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." <u>McCoy v. Massachusetts Institute of Tech.</u>, 950 F.2d 13, 22 (1st Cir. 1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support

---

at 70-72.)

7

their claim. Id. at 23 (citing Correa Martinez, 903 F.2d at 52). Moreover, Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

II.    Absolute Immunity

Absolute immunity is a defense encompassing the "special functions" of certain officials that resemble functions that would have been immune at common law when § 1983 was enacted. Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 29 (1st Cir. 1995)(quoting Buckley v. Fitzsimmons, 509 U.S. 259, 268-69 (1993)). In determining whether a particular act fits within the common-law tradition of absolute immunity, the Supreme Court takes a "functional approach." Id. (quoting Burns v. Reed, 500 U.S. 478, 486 (1991)). That approach entails an examination "the nature of the function performed, not the identity of the actor who performed it." Id. (quoting Buckley, 509 U.S. at 269).

Public officials are absolutely immune from suit, in their individual capacities, on section 1983 claims arising out of their respective judicial, quasi-judicial and prosecutorial functions, even when they acted "maliciously and corruptly." Wang v. New Hampshire Bd. of Registration in Medicine, 55 F.3d 698, 702 (1st Cir. 1995)(quoting Pierson v. Ray, 386 U.S. 547, 554 (1967)). "Absolute immunity is ... necessary to assure that

judges, advocates and witnesses can perform their respective functions without harassment or intimidation." Butz, 438 U.S. at 512.

All defendants contend that they are entitled to absolute immunity for their actions. Herbal, by contrast, contends that the only defendant official who might be potentially entitled to absolute immunity is Santoni, and it argues that even she is not entitled to such protection. The Court will thus determine each official's entitlement to absolute immunity by following the functional analysis outlined in the relevant case law.

A.  Defendant Santoni

Santoni served as DACO's ALJ during the relevant time period. It is well established that judges, including ALJs, are absolutely immune from liability for acts committed within their jurisdiction.[5] D'Agostino v. New York State Liquor Auth., 913 F. Supp. 757, 765 (W.D.N.Y. 1996); Stump v. Sparkman, 435 U.S. 349, 363 (1978); Butz v. Economou, 438 U.S. 478, 513-14 (1978). Herbal contends that Santoni acted contrary to DACO's enabling act and without any factual basis. Docket No. 9 at 17. Moreover, Herbal claims that Santoni "unreasonably delayed the

---

[5]Herbal does not allege that Santoni acted in the "clear absence of all jurisdiction." Wang, 55 F.3d at 702. Such an argument would border on the frivolous, considering that DACO is the principal Puerto Rico agency charged by its enabling act with the responsibility of protecting the interests of Puerto Rico's consumers. See P.R. Laws Ann. tit. 3, § 341b.

9

issuance of a final determination" until November 7, 1996, and that when she *did* issue a decision, she got it wrong. Id. at 18. Herbal contends that even if Santoni's actions were arguably protected by some kind of immunity, her arbitrary decision deprives her of the protections afforded by the absolute imunity doctrine.

Tellingly, Herbal provides no authority in support of its position, and the Court has found none. This is not surprising because the conduct about which Herbal complains is precisely the conduct that the absolute immunity doctrine was intended to protect. As the Supreme Court observed in Butz, "the risk of an unconstitutional act by one presiding at an agency hearing is clearly outweighed by the importance of preserving the independent judgment of these men and women." Butz, 438 U.S. at 514; see also Stump, 435 U.S. at 357-58 (noting that "a judge will not be deprived of immunity because action he took was in error, was done maliciously, or was in excess of his authority"). Here, Santoni actually afforded Herbal an opportunity to present its position, and Herbal did so over a three-day period. To be sure, Herbal was displeased with Santoni's putative lack of diligence and with its alleged failure to apply the law correctly, but those adjudicatory functions are entitled to absolute immunity from damages liability. Id. "Those who complain of error in such proceedings must seek agency or

10

judicial review." Id. Herbal did not do so. In fact, it expressly waived its right to seek review. Accordingly, the Court will dismiss Herbal's claims against Santoni on absolute immunity grounds.

B.  Defendants Alicea and Giralt

Herbal perfunctorily argues that none of the remaining defendants can be plausibly entitled to absolute immunity. See, e.g., Docket No. 9 at 17. It does not, however, offer any support for its conclusory statement. For their part, Alicea and Santini contend that they are entitled to absolute immunity because their actions as alleged in the Amended Complaint are "analogous to those of a prosecutor." Butz, 438 U.S. at 515. The Court agrees.

The Amended Complaint's allegations against Alicea and Giralt essentially focus on their drafting, approving, and issuing the Cease and Desist Order. That decision in effect initiated the administrative proceeding against Herbal. "The decision to initiate administrative proceedings ... is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." Butz, 438 U.S. at 515. Like a prosecutor, agency officials enjoy broad discretion in deciding whether to initiate administrative proceedings. Id.; Wang, 55 F.3d at 701. And that discretion "might be distorted if their immunity from damages arising from that decision was less than

11

complete." Butz, 438 U.S. at 515. Accordingly, because "agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment," those officials are entitled to absolute immunity from damages liability for their parts in that decision. Id. So it is here. The Court finds that absolute immunity bars Herbal's claims for damages against Alicea and Giralt.

    C.    Defendants Velazquez and Casanova

Defendants Velazquez and Casanova likewise claim entitlement to absolute immunity for their actions, but here the case law points uniformly in Herbal's direction. The functional analysis requires courts to draw a line "between preparatory conduct that is merely administrative or investigative, and that which is itself prosecutorial." Guzman-Rivera, 55 F.3d at 29. While the latter is afforded absolute immunity, the former is not. Id. The Amended Complaint alleges that Velazquez and Casanova were the agency officials who conducted the investigation that ultimately led DACO to issue the Cease and Desist Order. The Court concludes that absolute immunity does not extend to these particular defendants' actions. They may, however, be entitled to qualified immunity.

III.    Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from civil damages insofar as

their conduct does not violate a clearly established statutory or constitutional right which should have been known. See <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "Qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability' by attaching liability only if '[t]he contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" <u>United States v. Lanier</u>, 520 U.S. 259, 270 (1997). A plaintiff suing under § 1983 must allege a violation of a clearly established right secured by the Constitution or some other federal law. <u>Camilo-Robles v. Hoyos</u>, 151 F.3d 1, 6 (1st Cir. 1998).

The Supreme Court has explained that "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." <u>Brown</u>, 68 F.3d at 531 (quoting <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991)). Therefore, "before even reaching qualified immunity, [the Court] must ascertain whether the appellants have asserted a violation of a constitutional right at all." <u>Watterson v. Page</u>, 987 F.2d 1, 7 (1st Cir.1993); <u>Singer v. Maine</u>, 49 F.3d 837, 844 (1st Cir. 1995). Accordingly, the Court will first address each of the plaintiffs' claims to determine whether it

states a cause of action under federal law. If any of the claims meet this threshold requirement, it will then proceed to the issue of qualified immunity.

    A.   <u>The Constitutional Claims</u>

        1.   <u>Section 1983</u>

A claim brought pursuant to section 1983 has two essential elements. "First, the challenged conduct must be attributable to a person acting under color of state law (including Puerto Rico law); second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." <u>Soto v. Flores</u>, 103 F.3d 1056, 1061 (1st Cir. 1997)(citing <u>Martinez v. Colon</u>, 54 F.3d 980, 984 (1st Cir. 1995)). "The second element requires the plaintiff to prove not only a deprivation of federal right, but also that the defendant's conduct was a cause in fact of the alleged deprivation." <u>Soto</u>, 103 F.3d at 1062.

        2.   <u>Equal Protection Claim</u>

Herbal contends that it has a viable equal protection claim based on defendants' allegedly arbitrary actions and its desire to single the company's product for elimination from the market. The argument lacks merit.

The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where [a] plaintiff alleges that [he] has been intentionally treated

14

differently from others similarly situated and ... there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)(*per curiam*). The legal test applied to defendants' conduct is "an exceptionally deferential one." Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92, 104 (1st Cir. 2002). "An equal protection claim will only succeed if the decision to treat an individual differently than those similarly situated is wholly 'arbitrary or irrational.'" Id. (quoting Maine Cent. R.R. Co.v. Brotherhood of Maint. Way Employees, 813 F.2d 484, 492 (1st Cir. 1987)). Simply put, Herbal has not provided "any information about how any other party was similarly situated" nor has it "present[ed] a motive to explain why the [DACO] officials would treat them arbitrarily or irrationally." Donovan v. City of Haverhill, 311 F.3d 74, 77 (1st Cir. 2002). As a result, Herbal has failed to state a viable equal protection claim.

  3. <u>Procedural Due Process Claim</u>

Herbal cannot succeed on its procedural due process claim unless it can show that the state failed to provide it with an adequate postdeprivation remedy. Cronin v. Town of Amesbury, 81 F.3d 257, 260 (1st Cir. 1996). "[I]f a state provides adequate postdeprivation remedies -- either by statute or through the ... remedies available in its courts -- no claim of a violation of procedural due process can be brought under § 1983

against the state officials whose random and unauthorized conduct caused the deprivation." Lowe v. Scott, 959 F.2d 323, 340-41 (1st Cir. 1992); Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42-43 (1st Cir. 1994)(existence of adequate state postdeprivation remedy fatal to section 1983 procedural due process claim). Such is the case here. In any event, Herbal expressly relinquished its right to avail itself of the postdeprivation remedies provided by Puerto Rico law when it settled the federal court litigation on February 24, 1997. As a result, Herbal cannot show that the state failed to provide him with an adequate postdeprivation remedy. Its claim must be dismissed.

   4.   Substantive Due Process Claim

The substantive component of the due process clause protects against "certain government actions regardless of the fairness of the procedures used to implement them." Brown, 68 F.3d at 531 (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). A plaintiff may bring a substantive due process claim under two theories. Under the first, a plaintiff must demonstrate a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment. Brown, 68 F.3d at 531 (citing Pittsley v. Warish, 927 F.3d 3, 6 (1st Cir. 1991)). Under the second, a plaintiff is not required to prove the deprivation of a specific liberty or property interest, but, rather, he must prove that the state's conduct "shocks the

conscience." Pittsley, 927 F.3d at 6 (quoting Rochin v. California, 342 U.S. 165, 172 (1952)).

Herbal's allegations are not sufficient to give rise to the level of a constitutional violation under the "shocks the conscience" standard enunciated in Rochin and applied subsequently in this Circuit. See, e.g., Prittsley, 927 F.2d at 6; Brown, 68 F.3d at 531. None of the cases cited by Herbal, see, e.g., Licari v. Ferruzzi, 22 F.3d 344 (1st Cir. 1994); Amsden v. Moran, 904 F.2d F.2d 748, 754 (1st Cir. 1990), compel a different conclusion. Indeed, those cases expressly *rejected* the plaintiffs' substantive due process claims.

It is well-established that "a regulatory board does not transgress constitutional due process requirements merely by making decisions for erroneous reasons." Id. Even bad-faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process. Chongris v. Board of Appeals of the Town of Andover, 811 F.2d 36, 43 (1st Cir. 1987). Herbal's allegations, which describe a deprivation of its rights to engage in commerce and to use its commercial goodwill in its product, were not so "shocking or violative of universal standards of decency," Amsden, 904 F.2d at 754, as to transgress Herbal's constitutional rights. Accordingly, its substantive due process claim must be dismissed.

17

5. <u>First Amendment Claim</u>

Herbal's First Amendment argument is somewhat confused. It appears to argue that defendants' alleged actions - if not the agency's decision itself - violated its right to commercial free speech. It points to the seminal case of <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.</u>, 447 U.S. 557 (1980), argues that the state may only regulate commercial speech in a manner no more extensive than reasonably necessary, and points to two statutory provisions in DACO's Organic Act. <u>See</u> Docket No. 67 at 11 (citing P.R. Laws Ann. tit. 3, §§ 341 (1)(b) and (m)). But it thereafter attacks not any specific *regulation* itself (facially or as applied) as violative of its commercial speech rights, but the agency officials' *actions*, which "ignored the statutory requirements" applicable here. <u>Id.</u> It is thus unclear whether Herbal is actually objecting to a particular governmental regulation, or, as noted *supra*, whether it is simply attempting to recast its dissatisfaction with the agency's ruling as a misguided commercial speech claim.

Defendants point to the case of <u>Puerto Rico Tele-Com v. Ocasio Rodriguez</u>, 747 F. Supp. 836 (D.P.R. 1990)(Fuste, J.), in which another member of this Court examined DACO's regulations in the context of a series of allegedly deceitful advertisements. While <u>Puerto Rico Tele-Com</u> will doubtlessly inform this Court's ultimate ruling, it should be noted that the procedural posture

of that case was decidedly different from this one: there, Judge Fuste issued a ruling following a preliminary injunction hearing, in which he appears to have received specific evidence regarding the advertisements in question. Here, the Court is faced with a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). The Court cannot therefore consider defendants' contention that the advertisements were misleading and unlawful.

Even so, the Puerto Rico Tele-Com Court analyzed the challenged regulation under Central Hudson assuming *arguendo* that the plaintiff's ads were "not so misleading as to make them completely devoid of constitutional protection." Puerto Rico Tele-Com, 747 F. Supp. at 844. Before doing so, the Court would like to receive supplemental briefing from the parties – and especially from Herbal – clarifying the contours of its First Amendment claim. The Court grants Herbal a period of 20 days from the date of this Order to file a motion *specifically* outlining its commercial speech claim. Velazquez and Casanova will then have 20 days in which to respond.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion in part and denies it in part. The Court will enter partial judgment dismissing defendants Santoni, Alicea, and Giralt from the case. The Court will also dismiss plaintiffs' equal protection and due process claims. The Court denies,

without prejudice, defendants' motion on Herbal's First Amendment claim.  For the moment, the pendent state law shall remain with respect to defendants Velazquez and Casanova.  The Court declines to exercise supplemental jurisdiction with respect to the remaining defendants.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of June, 2003.

_____
JAY A. GARCIA-GREGORY
United States District Judge

20