UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HERBAL SENSATIONS, INC.,

    **Plaintiff(s)**

        **v.**

JOSE A. ALICEA RIVERA, <u>et al.</u>,

    **Defendant(s)**

CIVIL NO. 97-2417(JAG)

**MEMORANDUM AND ORDER**

GARCIA-GREGORY , D. J.

    Before the Court is plaintiff Herbal Sensations' ("Herbal") motion clarifying the nature of its commercial free speech claim (Docket No. 98) as requested by the court in its Opinion and Order of June 30, 2003 (Docket No. 91). On October 17, 2003, defendants filed an opposition (Docket No. 102). Herbal states that its civil rights violation claim under 42 U.S.C § 1983 is based on defendants' specific and direct actions which resulted in the deprivation, under color of state law, of its constitutionally protected commercial free speech rights under the First Amendment. Upon review of the parties' submissions, the Court **GRANTS** defendant's motion to dismiss. (Docket No. 50, 57.)

Civil No. 97-2417 (JAG)                                                      2

## DISCUSSION

A. <u>Motion to Dismiss Standard</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a Complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle it to relief. <u>See</u> <u>Brown v. Hot, Sexy, and Safer Prods. , Inc.</u>, 68 F.3d 525, 530 (1st Cir. 1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable interference in plaintiff's favor. <u>See</u> <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 51 (1st Cir. 1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. <u>Aulson v. Blanchard</u> , 83 F.3d 1, 3 (1st Cir. 1996). When opposing a Rule 12(b)(6) motion "a plaintiff cannot expect a trial court to do his homework for him." <u>McCoy v. Massachusetts Institute of Tech.</u>, 950 F.2d 13, 22 (1st Cir. 1991). Plaintiff is responsible for putting its best foot forward in an effort to present a legal theory that will support its claim. <u>Id.</u> at 23 (<u>citing</u> <u>Correa Martinez</u>, 903 F.2d at 52). Moreover, Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." <u>Gooley v. Mobil Oil Corp.</u>, 851 F. 2d 513, 514 (1st Cir. 1988).

B. <u>Herbal's Commercial Free Speech Claim</u>

Civil No. 97-2417 (JAG)                                             3

The First Amendment provides "that Congress shall make no law ... abridging the freedom of speech, or of the press...." U.S.C.A. CONST. Amend. 1. The Supreme Court has extended First Amendment protection to commercial speech. See Virginia Pharmacy Board v. Virginia Citizens Consumer Council, 425 U.S. 748, 773 (1976). Nevertheless, the Court recognized that the protections afforded to commercial speech are not as extensive as those granted to other types of speech. Id. at 771.

> The First Amendment's concern for commercial speech is based on the information function of advertising. First National Bank of Boston v. Bellotti, 435 U.S. 765, 783 (1978). Consequently, there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it, Friedman v. Rogers, [440 U.S. 1,] 13, 15- 16 [(1979)]; Ohralik v. Ohio State Bar Assn., [436 U.S. 447,] 464-465 [(1978)], or commercial speech related to illegal activity, Pittsburgh Press Co. v. Human Relations Comm'n, 413 U.S. 376, 388 (1973).

Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York, 447 U.S. 557, 563-4 (1980).

In order to ban a commercial communication, the government must first establish the substantial interest which is to be achieved by the restrictions and the regulatory technique must be in proportion to the government's interest and the limitation on expression must be designed carefully to achieve the government's goal. Id. at 564. Compliance with these requirements can be measured by analyzing (1) if the restriction directly advances the

Civil No. 97-2417 (JAG)                                                4

state interest involved, and (2) if the governmental interest could be equally advanced by a less onerous restriction on commercial speech. Id. The regulation will not survive if it either "provides only ineffective or remote support for the government's purpose," or if a less onerous restriction is available. Id.

The Supreme Court established a four-part test for analyzing the lawfulness of governmental restrictions on commercial speech. First, the Court must determine whether the speech in question is protected by the First Amendment. Second, the court must ask whether the asserted governmental interest is substantial. If both are inquiries are met, then the court must determine whether the regulation in question directly advances the governmental interest asserted and whether it is not more extensive than necessary to serve that interest. Id. at 557.

In this case, plaintiff's main argument is that defendants' intervention in its advertising campaign violated its First Amendment rights and constituted an unlawful restraint on protected speech activities. Herbal asserts that defendants caused the publication of a public notice proclaiming unequivocally branding its product as "fraudulent." Defendants counter by stating that the advertisement in question is not protected by the First Amendment because of its allegedly misleading nature and, thus, they could impose restrictions on its dissemination.

Upon careful evaluation of the parties' submissions, the

Civil No. 97-2417 (JAG)                                               5

Court finds that plaintiff has failed to demonstrate that defendants' actions rose to the level of a constitutional violation.  The Defendants received a complaint expressing concern about Fattaché and its ingredients.  Based on those allegations, DACO began an investigation of the product.  As part of the investigation, DACO sent a letter to Herbal requesting it to provide, within fifteen days, scientific evidence and information about Fattaché and the results promised by its advertisements. When Herbal failed to respond, DACO issued a Cease and Desist Order requiring it to immediately discontinue any television advertisements regarding Fattaché and a Press Release entitled "DACO Warning Against Fattaché."  The purpose behind the release was to alert consumers that Herbal had provided no scientific evidence to support its claims as to the results obtained through the use of the Fattaché product.

It is defendants' duty to regulate commercial communications which are more likely to deceive than to inform the public.  Thus, when the defendants found Herbal's advertisements to be at least potentially misleading inasmuch as they guaranteed results which, at that time, were scientifically unproven, they had a duty to so inform the public.  This is consonant with the First Amendment and the Supreme Court's holding that "[t]he government may ban forms of communication more likely to deceive the public than to inform it." See Central Hudson, 447 U.S. at 563; Friedman v. Rogers, 440 U.S.

Civil No. 97-2417 (JAG)                                              6

at 13, 15- 16; <u>Ohralik v. Ohio State Bar Assn.</u>, 436 U.S. at 464-465.  Therefore, the Court finds that DACO's actions do not rise to the level of a constitutional violation.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motion to dismiss Herbal's commercial free speech claim.  Judgment shall enter accordingly.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 30th day of March 2004.

<u>s/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge